# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0733V
UNPUBLISHED

| | |
|---|---|
| MICHAEL WILKINSON,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: January 14, 2022<br><br>Special Processing Unit (SPU); Findings of Fact; Onset; Ruling on Entitlement; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA). |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On May 17, 2019, Michael Wilkinson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of the influenza ("flu") vaccine on November 20, 2017, he suffered a shoulder injury related to vaccination ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I **GRANT** Petitioner's motion for a ruling on the record (ECF No. 36), because Petitioner has established the elements of a Table SIRVA claim.

I. **Relevant Procedural History**

In May 2019, this case was assigned to the SPU after its activation. On May 15, 2020, Respondent noted the 50-day interval between Petitioner's vaccination and his initial treatment with his primary care provider as possibly suggesting the onset requirement could not be met, but recommended that the case remain in the SPU nevertheless. ECF No. 17. Respondent entered into settlement negotiations on July 14, 2020. ECF No. 20. Petitioner obtained updated medical records, then conveyed his demand to Respondent on January 20, 2021. ECF No. 28.[3] After exchanging proposals, the parties advised that they had reached an impasse on May 21, 2021. ECF Nos. 29-32.

On August 24, 2021, Respondent filed his Rule 4(c) report in which he recommended against compensation for Petitioner's Table SIRVA claim. Respondent only disputed that Petitioner had established onset within 48 hours of vaccination. Rule 4(c) Report (ECF No. 34) at 5-6. I then directed the parties to file briefs and any other evidence that would assist my resolution of the disputed issues. ECF No. 35. On October 15, 2021, Petitioner filed a motion for a ruling on the record regarding onset and entitlement more generally. ECF No. 36. On October 28, 2021, Respondent filed a response, again addressing only onset. ECF No. 37. Petitioner did not file a reply. The matter is now ripe for adjudication.

II. **Relevant Factual Evidence**

I have fully reviewed the evidence, including all medical records and affidavits, Respondent's Rule 4(c) Report, and the parties' briefs. I find most relevant the following:

- Upon receiving the subject vaccination, Petitioner was 73 years old. His prior medical history was non-contributory. He sought medical care infrequently.

---

[3] Petitioner has represented that the claim does not involve a Medicaid lien or a worker's compensation claim. ECF No. 12. He is seeking pain and suffering, reimbursement of past out-of-pocket expenses, and a "modest" lost wages claim. ECF No 19.

- On November 20, 2017, Mr. Wilkinson received the flu vaccine in his left deltoid at a pharmacy inside of his place of employment, a Target retail store in Edina, Minnesota. Ex. 1 at 1.

- The next medical record is from fifty (50) days later, on January 9, 2018, when Petitioner presented to his primary care provider, nurse practitioner ("NP") Monica Overkamp. Ex. 2 at 606-09. NP Overkamp recorded Petitioner's history that "about two days prior to Thanksgiving," he had received a flu vaccine "fairly high up on his arm, close to the bony part of his left shoulder." Ex. 2 at 606-07. Petitioner reported that he had been experiencing pain and difficulty lifting his left shoulder, despite his efforts to self-treat including with heat, cold, and aspirin. *Id.* at 606-07. NP Overkamp documented that he had "full range of motion, no edema" (without specifying any particular extremities). *Id.* at 608. She offered orders for imaging and physical therapy, which Petitioner deferred while "consult[ing] an attorney regarding the placement of his flu shot this season." *Id.* at 609.

- Upon ordering the x-ray of Petitioner's left shoulder conducted on March 20, 2018, NP Overkamp wrote that the indication was "deltoid pain after vaccine several months ago," which had become "chronic." Ex. 5 at 17-18. This x-ray showed mild degenerative changes in the acromioclavicular joint. *Id.* at 18. It also suggested possible narrowing of the inferior aspect of the glenohumeral joint, for which the radiologist recommended follow-up imaging. *Id.*

- On June 12, 2018, NP Overkamp and Petitioner "followed up on his left shoulder discomfort following a flu shot in November." Ex. 2 at 621. Petitioner was "suspicious that his influenza vaccine is the cause of his left shoulder pain" and he was in contact with a lawyer. *Id.* at 622. NP Overkamp referred Petitioner to an orthopedist. *Id.* at 624.

- On June 20, 2018, Petitioner underwent a repeat x-ray of the left shoulder, which demonstrated an intact glenohumeral joint. Ex. 5 at 11-12.

- Also on June 20, 2018, orthopedist Alicia Harrison, M.D., conducted an initial consultation. Dr. Harrison accepted Petitioner's history of injury on "11/20/2017, got flu shot and has lingering pain ever since," as well as his initial assumption that the pain would resolve quickly. Ex. 2 at 636-37. After reviewing the imaging and conducting a focused physical exam, Dr. Harrison assessed Petitioner with "left shoulder pain, likely long head biceps

3

+/- cuff." She referred Petitioner for physical therapy. If that did not adequately address his symptoms, he should follow up for the potential of more advanced imaging. Ex. 2 at 638-39.

- On June 25, 2018, at an initial evaluation, physical therapist ("PT") Cynthia Lunch accepted Petitioner's history of receiving a flu vaccine on November 20, 2017, followed by "pain later that day anterior/lateral left shoulder which has not resolved." Ex. 4 at 1. PT Lunch documented that the left shoulder had limited range of motion, a positive impingement signs, and tenderness at the supraspinatus tendon. *Id.* at 2. PT Lunch planned a total of six weekly sessions. *Id.* at 4.[4]

- By August 27, 2018, Petitioner had demonstrated improvements in his pain levels and function, but his progress was slowed. He was discharged from physical therapy to follow a home exercise program. Ex. 4 at 22-27.

- There are no further medical records until March 9, 2020, when sports medicine specialist Siatta Dunbar, D.O., met with Petitioner for an initial consultation. Ex. 11 at 48. Dr. Dunbar took down Petitioner's history of "pain in the left shoulder began after getting a flu shot in the left shoulder at a pharmacy," which had never subsided. *Id.* at 48-49. Dr. Dunbar observed tenderness at the supraspinatus and limited range of motion. *Id.* at 49. She assessed pain and osteoarthritis, for which she administered a steroid injection into the left glenohumeral joint. *Id.* at 49-50.

- At their June 16, 2020, follow-up appointment, Dr. Dunbar recorded that Petitioner had experienced one month of relief with the steroid injection, but then his shoulder pain returned. Ex. 11 at 34. Dr. Dunbar assessed that Petitioner's pain appeared to be "multifactorial," including both osteoarthritis and dysfunction of the rotator cuff. *Id.* Dr. Dunbar recommended, "given that Dr. Harrison is a shoulder specialist, that Petitioner follow up and defer to her suggestions of next steps." *Id.* at 39.[5]

---

[4] Petitioner attended PT sessions on June 25; July 2; July 9; July 18; and July 30, 2018. There was a one-month gap before the final session on August 27, 2018.

[5] However, Petitioner has not filed any further records from Dr. Harrison.

4

- In an affidavit dated May 15, 2019, Petitioner recalls that the November 20, 2017, flu vaccine was initially "slightly more painful" than in past experiences. Ex. 8 at ¶ 2. His arm was "sore" that afternoon, but he had "experienced soreness in the past for just a day or two, so I tried to reassure myself that this would be the same." *Id.* However, the pain was still present three days post-vaccination, on November 23, 2017 (Thanksgiving), and over the ensuing weeks. *Id.* ¶¶ 2-3. He attempted to limit use of his left arm and used over-the-counter pain relievers and ice packs. *Id.* at ¶ 3.

- Petitioner recalls that at Christmas 2017, his daughter (who is an attorney) observed his shoulder pain and asked to remain informed if he did not start to improve soon. Ex. 8 at ¶ 4.

- Petitioner states: "When my symptoms were unchanged by the end of January 2018,[6] I let [the daughter] know. She did some research and let me know that this was not an uncommon occurrence following vaccination. I decided to make an appointment with my primary care doctor for a few reasons and felt I should bring my shoulder symptoms to their attention." Ex. 8 at ¶ 3.

## III.  Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

---

[6] I presume that Mr. Wilkinson's follow-up conversation with his daughter actually took place at the end of *December 2017*, in light of his recollection that the conversation preceded – and in fact prompted – the primary care appointment on January 9, 2018.

5

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of*

6

*Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Findings of Fact Regarding Onset

Respondent argues that "although Petitioner claims that the onset of his symptoms was immediate, these claims are not corroborated by the contemporaneous medical records." Rule 4(c) Report at 5-6. In effect, Respondent is questioning the fact that there are no close-in-time (perhaps as close as within 48 hours) records of pain complaints.

This reasoning suggests that to establish a Table injury, Petitioner must obtain medical care for his shoulder pain within the first 48 hours after vaccination. But the Vaccine Act does not impose such a requirement. *See* Section 13(b)(2) (permitting a special master to find onset "even though the occurrence of such symptom *was not recorded* or *was incorrectly recorded* as having occurred outside such time period," and only requiring a preponderance of the evidence) (emphasis added); *see also Stevens v. Sec'y of Health & Human Servs.*, No. 90-221V, 1990 WL 608693, at *3 (Fed. Cl. Spec. Mstr. 1990) (noting that clear, cogent, and consistent testimony can overcome missing or even contradictory medical records). Moreover, Petitioner's medical records, affidavit, and motion demonstrate that he initially believed that he was experiencing typical vaccination site pain, which would resolve without medical treatment. It is also consistent with many past successful cases.[7]

---

[7] *See, e.g.*, *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3082140, at *5 (Fed. Cl. Spec. Mstr. March 30, 2018), *review denied*, 142 Fed. Cl. 329 (2019); *Deutsch v. Sec'y of Health & Human Servs.*, No. 18-527V, 2021 WL 4995076 (Fed. Cl. Spec. Mstr. Sept. 24, 2021); *Winkle v. Sec'y of Heath & Human Servs.*, No. 20-485, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. June 3, 2021); *Williams v. Sec'y of Health & Human Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019); *Knauss v. Sec'y of Health & Human Servs.*, No.16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018).

Conversely, it is reasonable to expect that an average individual will seek medical attention for sudden pain following a vaccination, particularly if the pain is severe. *See, e.g.*, *Pitts v. Sec'y of Health & Human Servs.*, No. 18-1512v, 2020 WL 2959421, at *5 (Fed. Cl. Spec. Mstr. April 29, 2020); *see also Eshraghi v. Sec'y of Health & Human Servs.*, No. 19-39V, 2021 WL 2809590, at *3 (Fed. Cl. Spec. Mstr. June 4, 2021) (in which the petitioner claimed "excruciating" pain that prevented him from performing many simple, everyday tasks).

Therefore, the length of time before a petitioner seeks medical treatment may help to illustrate the severity of injury, therefore bearing on the potential award for pain and suffering (in the event that entitlement is established).

Respondent also argues that the later medical records represent only Petitioner's own claims regarding onset. Rule 4(c) Report at 6; Response at 1-2 (citing Section 13(a)(1); *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259 (1997)). As I have previously recognized,[8] however, *Lett* is inapposite, because the petitioners therein failed to obtain *any* medical records that demonstrated that their minor child had experienced the alleged injury at *any time*, much less within the timeframe for a Table injury. 39 Fed. Cl. at 262. Moreover in *Lett*, the petitioners' expert neurologist conceded that he could not identify any events that could have represented seizures, based on either the Table definition or his own medical knowledge. *Id.* In denying the petitioners' motion for review, the Court of Federal Claims stressed that there was "no corroborating evidence that [their minor child] ever suffered a seizure." *Id.* at 262-63. This is distinguishable from a medical provider's *later* documentation of the injury alleged and acceptance of the petitioner's history of the inciting circumstances. Such "information supplied to… health professionals" is presumed to be trustworthy, especially in the absence of evidence supporting a different onset or a different precipitating event. *Cucuras*, 993 F.2d at 1528.

For the foregoing reasons, Mr. Wilkinson has established that he suffered the onset of shoulder pain within 48 hours after vaccination.

### V. Other Table Requirements and Entitlement

In light of the lack of other objections and my own review of the record, I find that Petitioner has established the other requirements for a Table SIRVA claim. Specifically, there is not a history of prior shoulder pathology that would explain her injury. 42 C.F.R. § 100.3(c)(3)(10)(i). There is no evidence of any other condition or abnormality that represents an alternative cause. 42 C.F.R. § 100.3(c)(3)(10)(iii). The medical records and affidavits support that his shoulder pain and reduced range of motion were limited to the left shoulder. C.F.R. § 100.3(c)(3)(10)(iv). The contemporaneous vaccination record reflects the site of administration as his left deltoid. Ex. 1; Sections 11(c)(1)(A) and (B)(i). Petitioner has not pursued a civil action or other compensation. Ex. 1 at ¶ 12; Section 11(c)(1)(E). Finally, Petitioner suffered the residual effects for more than six months after vaccination. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

---

[8] *Smith v. Sec'y of Health & Human Servs.*, No. 19-1384V, 2021 WL 6285638 (Fed. Cl. Spec. Mstr. Dec. 2, 2021); *Hartman v. Sec'y of Health & Human Servs.*, No. 19-1106V, 2021 WL 4823549, at *4 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

## VI. Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A subsequent order will set further proceedings towards resolving damages.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
